**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| TACTUS TECHNOLOGIES, LLC, | § | |
| | § | Case No.  2:20-cv-00040-JRG-RSP |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| HMD GLOBAL OY, | § | |
| | § | |
| Defendant. | § | |

**MOTION TO DISMISS FOR INSUFFICIENT PROCESS, INSUFFICIENT**
**SERVICE OF PROCESS, AND LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

**Pages**

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Issues to be Decided. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    HMD Global and HMD America. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.    Tactus Files This Action, Naming Only HMD Global. . . . . . . . . . . . . . . . . . . . . 3

C.    Tactus Modifies the Court's Issued Subpoena to Write in a Miami Address. . . . . . . . 3

D.    Tactus Purports to Serve HMD Global by Handing Documents to Cristian Capelli,
      an Employee of HMD America Working at HMD America's Miami Office. . . . . . . . . 4

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.     This Court Can Exercise Jurisdiction Only Over Properly Served Parties. . . . . . . . . . 5

II.    Tactus Cannot Meet Its Burden Under Rule 12(b)(4), Because Its Purported
       Summons Was Neither Issued by the Court Nor Signed By the Clerk. . . . . . . . . . . . . 6

III.   Tactus Cannot Meet Its Burden to Show "Service of Process" Under Rule 12(b)(5). . . . 7

       A.    Tactus Failed to Serve HMD Global Directly. . . . . . . . . . . . . . . . . . . . . . . . 8

       B.    Tactus Failed to Serve HMD Global Through a Domestic Alter Ego. . . . . . . . . . 9

             1.    Tactus' Summons Does Not Seek Service of a Domestic Alter Ego. . . . . 9

             2.    Tactus Cannot Meet Its Burden to Show That HMD Global
                   Actually Authorized HMD America As Its Agent For Service, Since
                   It Did Not. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

             3.    Tactus Cannot Meet Its Burden to Show That HMD America Is an
                   Alter Ego of HMD Global. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.    The Court Should Dismiss This Action Rather Than Quash Service of Process. . . . . . 13

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**TABLE OF AUTHORITIES**

*Cases*                                                                                    **Pages**

*Arroyo v. Oprona, Inc.,*
    2016 WL 8607594 (S.D. Tex. Dec. 30, 2016). . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*BMC Software Belgium N.V. v. Marchand,*
    83 S.W.3d 789 (Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*BMC Software Belgium N.V. v. Marchand,*
    2017 WL 1106318 (S.D. Tex. Mar. 24, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Blue Spike, LLC v. ASUS Comput. Int'l, Inc.,*
    2018 WL 3301705 (E.D. Tex. Feb. 20, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Blue Spike, LLC v. ASUS Comput. Int'l, Inc.,*
    2018 WL 1443783 (E.D. Tex. Mar. 23, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Brewer v. Suzuki Motor of Am. Inc.,*
    2015 WL 4433046 (S.D. Tex. July 17, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Carimi v. Royal Carribean Cruise Line, Inc.,*
    959 F.2d 1344 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Coleman v. Bank of N.Y. Mellon,*
    969 F. Supp. 2d 736 (N.D. Tex. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Corbett v. Nan Riethmayer Phifer,*
    2014 WL 12585665 (N.D. Tex. Oct. 23, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Freudensprung v. Offshore Tech. Servs., Inc.,*
    379 F.3d 327 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gianna Enters. v. Miss World (Jersey) Ltd.,*
    551 F. Supp. 1348 (S.D.N.Y. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Glencore Ltd. v. Occidental Argentina Exploration and Prod., Inc.,*
    2012 WL 591226 (S.D. Tex. Feb. 22, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Hargrave v. Fibreboard Corp.,*
    710 F.2d 1154 (5th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

**TABLE OF AUTHORITIES**

*(continued)*                                                                 **Pages**

*Henderson v. Republic of Tex.,*
    672 F. App'x 383, 384 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*J.O. Alvarez, Inc. v. Rainbow Textiles, Inc.,*
    168 F.R.D. 201 (S.D. Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lisson v. ING Groep N.V.,*
    262 F. App'x 567 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,*
    526 U.S. 344 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Special Indus., Inc. v. Zamil Grp. Holding Co.,*
    578 F. App'x 325 (5th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,11

*Traxcell Techs., LLC v. Nokia Sols. & Networks US LLC,*
    2019 WL 8137134 (E.D. Tex. Oct. 22, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

*Umbenhauer v. Woog,*
    969 F.2d 25 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Volkswagenwerk Aktiengesellschaft v. Schlunk,*
    486 U.S. 694 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# TABLE OF AUTHORITIES

*Statutes and Rules* **Pages**

35 U.S.C. § 286. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 1391(c)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 4(a)(1)(F). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. 4(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

Fed. R. Civ. P. 4(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 4(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

Fed. R. Civ. P. 4(m). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 13

Fed. R. Civ. P. 12(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Loc. R. CV-4(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7


*Other Authorities*

Hague Convention on Service Abroad of Judicial and Extrajudicial Documents,
    Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 . . . . . . . . . . . . . . . . . . . . . .1, 2, 8, 9, 13

Purported defendant HMD Global Oy ("HMD Global") appears specially and solely for the purpose of contesting jurisdiction in this action, and respectfully moves the Court under Fed. R. Civ. P. 12(b)(2), 12(b)(4), and 12(b)(5), for an order dismissing the complaint without prejudice or, in the alternative, quashing the purported service of process on HMD Global by plaintiff Tactus Technologies, LLC ("Tactus").

## INTRODUCTION

Tactus failed to serve HMD Global as required by law, and so this Court should dismiss this action without prejudice.  Although this Court recently found that the Hague Convention is the sole method of proper service on HMD Global, Tactus simply ignored this decision and instead purported to serve HMD Global through the slapdash method of handing an improper subpoena, bearing an incorrect address, to an unlucky employee of non-party HMD America, Inc., who happened to be in that company's Miami office, largely shut down due to the pandemic, and went to answer the door.  Instead of effecting proper service, Tactus simply declared this HMD America employee to be an agent of HMD Global (which he is not) and filed an affidavit claiming that service was complete.

Tactus' purported service failed in several ways.  First, Tactus improperly modified the summons issued by the Court, writing a Miami address below the Finnish address signed by the clerk.  Second, Tactus ignored this Court's prior ruling that the Hague Convention is the sole proper method of service on HMD Global.  Third, Tactus' purported service on an HMD America employee, Cristian Capelli, could not reach HMD Global in any event, because neither Mr. Capelli nor HMD America is an agent for service on HMD Global.  Any of these failures would doom Tactus' purported service; all three of them destroy it.

– 1 –

Faced with Tactus' multiple failures, the Court could dismiss its claims without prejudice under Rules 12(b)(2), 12(b)(4), and 12(b)(5), or quash its defective service and let Tactus try again.  Given Tactus' failure to follow the Court's rules and the expiration of its time to serve under Rule 4(m), the Court should exercise its discretion to dismiss this action without prejudice.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Did Tactus use a summons issued by the Court and signed by the clerk?

2.      Was this Court correct in *Traxcell Technologies, LLC v. Nokia Solutions & Networks US LLC*, when it found that because "HMD Global Oy is based in Finland and Finland is a signatory to the Hague Convention," plaintiffs seeking to serve HMD Global "must comply with the requirements of the Hague Convention"?  No. 18-412, 2019 WL 8137134, at *3 (E.D. Tex. Oct. 22, 2019).

3.      Did Tactus serve HMD Global through the Hague Convention?

4.      Did HMD Global actually authorize HMD America to accept service of legal process on its behalf?

5.      Is HMD America an alter ego of HMD Global?

## BACKGROUND

### A.      HMD Global and HMD America

HMD Global is a Finnish company with headquarters in Espoo, Finland.  *See* Compl. ¶ 2; Declaration of Rex C. Fryhover ("Fryhover Decl.") ¶ 3.  HMD Global develops, manufactures, and markets mobile devices under the Nokia brand name.  *See* Fryhover Decl. ¶ 4.  HMD America, Inc. ("HMD America") is a Florida corporation, with headquarters at 1200 Brickell Avenue, Suite 510, Miami, Florida.  *See* Fryhover Decl. ¶ 2.  HMD America is a wholly owned

subsidiary of HMD Global.  *See id.* ¶ 3.  HMD America imports and sells mobile devices in the

United States, and provides in-country support to United States customers.  *See id.* ¶ 4.

**B.      Tactus Files This Action, Naming Only HMD Global**

On February 18, 2020, plaintiff Tactus Technologies, LLC ("Tactus") filed its complaint

in this Court, naming only a single defendant:  HMD Global.  Docket No. 1.  The complaint

alleges that "Defendant is a Finish (sic) corporation with places of business at Karaportti 2,

FIN-02610, Espoo, Finland and Level 4, 4 Kingdom Street, Paddington Central, London

W26BD."  *Id.* ¶ 2.  Although HMD Global is a Finnish corporation, in 2018 it moved its

headquarters from the Karaportti address to Bertel Jungin aukio 9, 02600, Espoo, Finland.   The

complaint does not allege that HMD Global has a place of business in this district, or anywhere

else in the United States.  *Id.*  Instead, the complaint alleges that "Defendant is a foreign entity

and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3)."  *Id.* ¶ 5.

**C.      Tactus Modifies the Court's Issued Subpoena to Write in a Miami Address**

As this Court's rules require, "the plaintiff must prepare and submit a summons to the

clerk for each defendant to be served with a copy of the complaint."  Loc. R. CV-4(a).  Tactus

prepared a summons naming HMD Global and listing its old, Karaportti address, and submitted

it with its initial complaint; the Court promptly issued this summons, signed by the clerk.

Docket No. 4.  Sometime after that (but apparently before May 14), without seeking issuance of

a new summons, asking the Court to modify the existing summons, or even notifying the Court

of its intention to do so,

Tactus simply wrote a

new address, this time in

Miami, underneath the address on the summons issued by the Court and signed by the clerk.

*See* Declaration of Cristian Capelli ("Capelli Decl.") Ex. A.

**D.     Tactus Purports to Serve HMD Global by Handing Documents to Cristian Capelli, an Employee of HMD America Working at HMD America's Miami Office**

According to Tactus' "Affidavit of Service," its process server in Miami received

documents, including the improperly modified summons, on Thursday, May 14—only two

business days before Tactus' 90-day service deadline of Monday, May 18.  *See* Docket No. 5;

Fed. R. Civ. P. 4(m).  The process server went to HMD America's Miami office at 1200 Brickell

the following day, but the office was closed due to the pandemic.  *See* Docket No. 5 ("Closed no

contact.  Seems it's been a while"); Capelli Decl. ¶ 3.

On Wednesday, May 20, two days after the Rule 4(m) deadline, Tactus' process server

returned and purported to effect service, dropping off the improperly modified summons as well

as the complaint.  *See* Docket No. 5.  Receiving the documents was Cristian Capelli, General

Manager of Retail and Business Development for HMD America, whose responsibilities include

managing customer and partner relationships in the United States and Canada.  *See* Capelli Decl.

¶ 2.  Based on this interaction with Mr. Capelli, Tactus' process server executed, and Tactus filed

with this Court, an "Affidavit of Service" stating that he:

> served a CORPORATION by delivering a true copy of the Summons in a Civil Action
> and Plaintiff's Original Complaint for Patent Infringement with Exhibits with the date
> and hour of service endorsed thereon by me, to:  CRISTIAN CAPELE (sic), as SALES
> REPRESENTATIVE for HMD GLOBAL OY, at the address of:  1200 BRICKELL
> AVENUE, UNIT/SUIT 510, MIAMI, FL 33131, and informed said person of the
> contents therein, in compliance with state statutes.

Docket No. 5.  But Mr. Capelli is not a "SALES REPRESENTATIVE for HMD GLOBAL OY";

he is not even an employee of HMD Global, but rather HMD America.  *See* Capelli Decl. ¶¶ 1-3.

Nor is he authorized to accept service for HMD Global (or HMD America, for that matter). *See id.* ¶ 7. Indeed, he was only there by chance: he had been working remotely due to the coronavirus pandemic, and on May 20 went to his office for the first time in some time. *See id.* ¶¶ 3-4. While he was there, he heard someone buzz for entry into the HMD America offices, which otherwise require keypad access, and opened the door to find a delivery person who was not in uniform and did not identify himself. *See id.* ¶¶ 4-5. The delivery person asked for Mr. Capelli's name, which he provided, and purported to serve him with process for this action. *See id.* ¶ 5 & Ex. A. Mr. Capelli did not know, and the delivery person did not tell him, that he was delivering legal documents, or that accepting the package had any alleged legal effect. *See id.* ¶ 6. Mr. Capelli did not accept service of process for HMD Global, and is not authorized to do so. *See id.* ¶ 7. He just happened to be in the office and to answer the door. *See id.*

## **ARGUMENT**

### I.     **This Court Can Exercise Jurisdiction Only Over Properly Served Parties**

"District courts 'cannot exercise jurisdiction over a defendant which has not been served properly.'" *Glencore Ltd. v. Occidental Argentina Exploration and Prod., Inc.*, No. 11-3070, 2012 WL 591226, at *2 (S.D. Tex. Feb. 22, 2012) (quoting *J.O. Alvarez, Inc. v. Rainbow Textiles, Inc.*, 168 F.R.D. 201, 203 (S.D. Tex. 1996)); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."). Tactus cannot proceed with this action if it used either "insufficient process" by failing to serve a proper summons and accompanying papers, Fed. R. Civ. P. 12(b)(4), or "insufficient service of process" by failing to serve its papers in a legally

sufficient manner, Fed. R. Civ. P. 12(b)(5).  If it fails either of these tests, it cannot obtain

personal jurisdiction over HMD Global.  Fed. R. Civ. P. 12(b)(2); *Glencore*, 2012 WL 591226,

at *2.

       When a defendant challenges the Court's jurisdiction on these grounds, as HMD does

here, the plaintiff bears the burden of showing the sufficiency of both its process and service of

process.  *See Henderson v. Republic of Tex.*, 672 F. App'x 383, 384 (5th Cir. 2016) ("Once the

validity of service of process has been contested, the plaintiff bears the burden of establishing its

validity." (quoting *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir.

1992)); *Coleman v. Bank of N.Y. Mellon*, 969 F. Supp. 2d 736, 744 (N.D. Tex. 2013) ("The

plaintiff bears the burden of proof regarding sufficiency of the process." (citations omitted)).

## II.    Tactus Cannot Meet Its Burden Under Rule 12(b)(4), Because Its Purported Summons Was Neither Issued by the Court Nor Signed By the Clerk

       The Court can quickly dismiss this action based on Tactus' "insufficient process" under

Rule 12(b)(4).  A summons "must be issued" by the Court and "be signed by the clerk."  Fed. R.

Civ. P. 4(b), 4(a)(1)(F).  The summons that Tactus purported to serve meets neither test.  The

Court issued a summons, signed by the clerk, that named HMD Global at its old, Karaportti

address.  Docket No. 5; *see supra* § C.  But Tactus purported to serve not that summons, but a

different one that it prepared through self-help, modifying the Court-issued and clerk-signed

summons by writing in the Miami address of HMD America.  *See* Capelli Decl. ¶ 5 and Ex. A;

*supra* § C.  This new summons was neither "issued" by the Court nor "signed by the clerk."

Fed. R. Civ. P. 4(b), 4(a)(1)(F).  The clerk's signature still appears on the self-help summons, of

course, but the clerk did not "sign" the self-help summons any more than a person "signs" a

– 6 –

contract modified after their signature.  If a plaintiff can modify a summons after the Court

issues it and the clerk signs, then the Court's issuance and the clerk's signature have no meaning.

Tactus' behavior is difficult to understand.  Tactus could have submitted a new summons

for the clerk to sign and the Court to issue.  Loc. R. CV-4(a).  Tactus' decision not to submit a

new summons, and instead to rely on self-help, meant that it purported to serve a summons that

appeared to be issued by the Court and signed by the clerk, but was actually neither.  This was

improper.  *See Gianna Enters. v. Miss World (Jersey) Ltd.*, 551 F. Supp. 1348, 1358 (S.D.N.Y.

1982) ("Service of an unsigned and unsealed summons, however, is a more serious infraction for

which a court, in its discretion, need not allow amendment.  Such service may demonstrate a

flagrant disregard for the rules and fails to assure the person served that the summons was in fact

issued by the clerk of a court and not by the plaintiff or his attorney.").  In *Gianna Enterprises*,

the plaintiff's self-help took a slightly different form:  the plaintiff purported to serve a summons

bearing no signature from the clerk.  *Id.* at 1358.  Tactus' summons here (which appeared on its

face to be signed by the clerk and issued by the Court) was materially more improper than the

summons in *Gianna Enterprises* (which bore no signature from the clerk and thus appeared

invalid on its face).  Tactus' process was insufficient, and the Court should therefore dismiss the

complaint under Fed. R. Civ. P. 12(b)(4).

## III.   Tactus Cannot Meet Its Burden to Show "Service of Process" Under Rule 12(b)(5)

"A plaintiff may serve a foreign defendant directly or by serving its domestic subsidiary."

*Brewer v. Suzuki Motor of Am., Inc.*, No. 15-197, 2015 WL 4433046, at *1 (S.D. Tex. July 17,

2015); *see also Blue Spike, LLC v. ASUS Comput. Int'l, Inc.*, No. 16-1384, 2018 WL 3301705, at

*3 (E.D. Tex. Feb. 20, 2018), *report and recommendation adopted*, 2018 WL 1443783 (E.D.

Tex. Mar. 23, 2018).  Tactus here did neither.

### A.    Tactus Failed to Serve HMD Global Directly

Tactus could serve HMD only through the Hague Convention; it did not even try to do

so.  "When serving a foreign defendant directly, service is governed by Federal Rule of Civil

Procedure 4(h), which allows for the service of a corporation in any manner prescribed by Rule

4(f) except for personal delivery."  *Blue Spike*, 2018 WL 3301705, at *3; *see* Fed. R. Civ. P.

4(h)(2).  Rule 4(f), in turn, requires service by "any internationally agreed means of service that

is reasonably calculated to give notice, such as those authorized by the Hague Convention on the

Service Abroad of Judicial and Extrajudicial Documents," Fed. R. Civ. P. 4(f)(1), and allows

other means of service only "if there is no internationally agreed means, or if an international

agreement allows but does not specify other means."  Fed. R. Civ. P. 4(f)(2).  HMD Global is a

Finnish company, and Finland is a signatory to the Hague Convention, so the Hague Convention

is the sole proper means of direct service on HMD Global.  There is no need to take our word for

it:  this Court recently decided, in another case involving improper service on HMD Global, that

the Hague Convention is the sole method of proper service:

> HMD Global Oy is a business that is both organized and based in Finland.  (Dkt. No. 22 at
> ¶ 8.)  The United States and Finland are both signatories to the Hague Convention.  Nov.
> 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (the "Hague Convention"); *see also* HCCH
> Members (accessed 10/18/2019), https://www.hcch.net/en/states/hcch-members.  The
> Hague Convention states that "[t]he present Convention ***shall*** apply in all cases, in civil or
> commercial matters, where there is occasion to transmit a judicial or extrajudicial
> document for service abroad."  *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S.
> 694, 699 (1988) (quoting Hague Convention, 20 U.S.T. at 362) (emphasis added).  The
> Supreme Court has recognized the mandatory nature of this clause and stated that, "[b]y
> virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts
> inconsistent methods of service prescribed by state law in all cases to which it applies."  *Id.*

*Traxcell Techs., LLC v. Nokia Sols. & Networks US LLC*, No. 18-412, 2019 WL 8137134, at *3

(E.D. Tex. Oct. 22, 2019) (emphasis in original).  Considering this authority, the Court found

that because "HMD Global Oy is based in Finland and Finland is a signatory to the Hague

Convention," plaintiffs seeking to serve HMD Global "must comply with the requirements of the

Hague Convention,"  *Id.*  This Court's recent conclusion was correct, and nothing has changed

since then in either fact or law.

Tactus admits it did not comply with the Hague Convention, and indeed that it sought to

avoid doing so.  Docket No. 5.  Since the Hague Convention is the sole mode of proper service

on HMD Global, Tactus' attempt to avoid it renders its "service of process" defective, leading to

dismissal under Fed. R. Civ. P. 12(b)(5).

### B.      Tactus Failed to Serve HMD Global Through a Domestic Alter Ego

Having failed to serve HMD Global itself, Tactus must show that its delivery to HMD

America constitutes service of process on HMD Global.  It cannot.  "Indirect service of

process—service upon a foreign defendant via its domestic subsidiary—is valid when the

defendant has either:  (1) actually authorized the subsidiary to accept service of process on its

behalf; or (2) if '[t]he relationship between the subsidiary and parent [is] such that they are in

reality the same corporation.  Typically, this requires the corporate separation to be fiction.'"

*Blue Spike*, 2018 WL 3301705, at *3 (quoting *Special Indus., Inc. v. Zamil Grp. Holding Co.*,

578 F. App'x 325, 332 (5th Cir. 2014)).  Neither is true here.

### 1.      Tactus' Summons Does Not Seek Service of a Domestic Alter Ego

As an initial matter, Tactus' summons and affidavit of service do not seek to serve HMD

Global through HMD America; to the contrary, they specifically claim service on HMD Global

itself.  *See* Docket No. 5; *supra* § D.  To the extent that Tactus argues that it effected service on

HMD Global through HMD America, its process was insufficient under Fed. R. Civ. P. 12(b)(4)

for this reason as well.  *See supra* § II.

> ### 2.  Tactus Cannot Meet Its Burden to Show That HMD Global Actually Authorized HMD America As Its Agent For Service, Since It Did Not

HMD Global has not authorized HMD America, or Mr. Capelli, as an agent for service of

process.  *See* Fryhover Decl. ¶ 7; Capelli Decl.  ¶ 7.  Neither HMD America nor Mr. Capelli is a

registered agent for HMD Global.  *See* Fryhover Decl. ¶ 7; Capelli Decl. ¶ 7.  HMD America

does not accept service on behalf of HMD Global, and is not authorized to do so.  *See* Fryhover

Decl. ¶ 7.  Tactus thus cannot claim that HMD Global "actually authorized" HMD America "to

accept service of process on its behalf."  *Blue Spike*, 2018 WL 3301705, at *3.

> ### 3.  Tactus Cannot Meet Its Burden to Show That HMD America Is an Alter Ego of HMD Global

HMD America is not an alter ego of HMD Global, and Tactus cannot overcome the

presumption of corporate separateness to make indirect service effective here.

> Because there is a presumption of corporate separateness among related companies, in order for Plaintiff to effectively serve process and obtain personal jurisdiction over Rosen Swiss AG through Oprona, she must show that Rosen Swiss AG controls "the internal business operations and affairs" of Oprona, making Oprona "its agent or alter ego, and hence fuse the two together for jurisdictional purposes." *Freudensprung*, 379 F.3d at 346 (quoting *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983)) (internal quotation marks omitted). "The degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud and injustice."

*Arroyo v. Oprona, Inc.*, No. 16-852, 2016 WL 8607594, at *4 (S.D. Tex. Dec. 30, 2016) (quoting

*BMC Software Belgium N.V. v. Marchand*, 83 S.W.3d 789, 799 (Tex. 2002)), *report and*

*recommendation adopted*, No. 16-852, 2017 WL 1106318 (S.D. Tex. Mar. 24, 2017).  "The

party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities must prove this allegation." *Special Indus., Inc.*, 578 F. App'x at 332 (quoting *BMC Software*, 83 S.W.3d at 798).

Courts routinely reject service on a domestic subsidiary unless the plaintiff can prove complete control by the foreign corporation.  For example, in *Arroyo v. Oprona, Inc.*, the plaintiff sought to serve defendant Rosen Swiss AG, a Swiss company, by serving the registered agent for its domestic subsidiary and co-defendant, Oprona.  Case No. 16-852, 2016 WL 8607594, at *1-2 (S.D. Tex. Dec. 30, 2016).  The *Arroyo* court found that Rosen Swiss AG was a sister company of Oprona, shared at least one common director and officer, and exercised "significant control over Oprona's finances." *Id*. at *5.  The court nevertheless granted Rosen Swiss AG's motion to dismiss for improper service, concluding that the plaintiff "has not met her burden of proof to show *complete* control by Rosen Swiss AG" and that "Oprona is not the agent or alter ego of Rosen Swiss AG." *Id*. (emphasis in original).

Similarly, in *Blue Spike*, the court first determined that the plaintiff failed to directly serve the foreign defendant under Federal Rule of Civil Procedure 4(h).  2018 WL 3301705, at *3.  The court next found that "Blue Spike did not indirectly serve ASUSTeK via ASUS with actual authority because ASUSTeK did not authorize ASUS or ASUS's registered agent to accept service of process on its behalf." *Id*. at *6.  Finally, the *Blue Spike* court, like the *Arroyo* court, considered whether the foreign corporation "exercises such control over the domestic subsidiary that the two entities are essentially one." *Id*. (quoting *Lisson v. ING Groep N.V.*, 262 F. App'x 567, 570 (5th Cir. 2007)).  In support of its position, the plaintiff alleged that ASUSTeK, the foreign company, "uses ASUS as a conduit for its US business.  Blue Spike also

– 11 –

emphasizes that ASUSTeK owns 100 percent of ASUS's stock and controls ASUS's Articles of Incorporation.  Blue Spike additionally notes that every page of ASUS's website has ASUSTeK's trademark." *Id.* at *7 (internal citations omitted).  The court rejected these arguments, and found that "Blue Spike has not met its burden to prove that ASUSTeK and ASUS have an alter ego relationship.  The Fifth Circuit has 'noted often that 100% stock ownerships and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations.'" *Id.* (quoting *Hargrave*, 710 F.2d 1154, 1160 (5th Cir. 1983)).

HMD America is not an alter ego of HMD Global.  HMD Global develops, manufactures, and markets mobile devices under the Nokia brand name.  *See* Fryhover Decl. ¶ 4.  HMD America imports and sells mobile devices in the United States, and provides in-country support to United States customers.  *See id.*  HMD Global does not control the internal business operations and affairs of HMD America.  *See id.* ¶ 5.  HMD Global does not manage HMD America's daily operations, and the companies employ different people.  *See id.*  The companies operate in different countries under separate bylaws, and hold separate board meetings.  *See id.* ¶¶ 5-6.  The companies keep separate financial statements, separate books and records, and file separate tax returns.  *See id.* ¶ 6.  HMD America is a distinct corporate entity, and Tactus cannot "fuse the two together for jurisdictional purposes." *Arroyo*, 2016 WL 8607594, at *4 (internal quotation marks omitted).  Applying this analysis, the Court should dismiss Tactus' complaint under Rule 12(b)(5) for insufficient service of process, and by extension, Rule 12(b)(2) for lack of personal jurisdiction.[1]

---

[1] Even if Tactus could meet its burden to show that HMD America is the alter ego of HMD Global, doing so would likely make venue improper in this district.

IV.     **The Court Should Dismiss This Action Rather Than Quash Service of Process**

"Once a court determines that process has not been properly served on a defendant, the court possesses broad discretion to either dismiss the plaintiff's complaint for improper service or to simply quash service of process." *Blue Spike*, 2018 WL 3301705, at *8 (citing *Corbett v. Nan Riethmayer Phifer*, No. 14-23, 2014 WL 12585665 at *4 (N.D. Tex. Oct. 23, 2014)). "Generally, dismissal of a complaint is inappropriate when there is a reasonable prospect that service may be properly effectuated." *Blue Spike*, 2018 WL 3301705, at *8 (citing *Umbenhauer v. Woog*, 969 F.2d 25, 30-31 (3d Cir. 1992)).

On the facts before it, the Court should dismiss this action without prejudice rather than quash service.  Tactus filed its complaint on February 18, 2020, Docket No. 1, but did not even attempt improper service until May 15.  *See supra* § D.  Its 90 days to complete service ended on May 18, 2020.  Fed. R. Civ. P. 4(m).  That deadline would not apply if Tactus sought to serve HMD Global properly through the Hague Convention, but Tactus has shown no inclination to do so.  There is thus no "reasonable prospect that service may be properly effectuated," and so the Court should dismiss this action without prejudice.  Nor would Tactus' claims suffer from such a dismissal:  HMD was founded in December 2016, far less than six years ago, and of course made its first devices after that.  Should Tactus decide to refile its suit and properly serve HMD Global, it would lose no portion of its damages claim.  *See* 35 U.S.C. § 286.  The Court should not reward Tactus' failure to follow the rules, from its improper self-help revision to the Court-issued summons to its improper attempt at service on an unlucky employee of HMD America, by choosing the more lenient result.  Instead, the Court should dismiss this action without prejudice.

## CONCLUSION

For the foregoing reasons, HMD respectfully requests that the Court dismiss Tactus'

complaint or, in the alternative, quash Tactus' purported service of the complaint.


Dated:  June 10, 2020                          Respectfully submitted,

                                               */s/ Deron R. Dacus*
                                               Deron R. Dacus
                                               State Bar No. 00790553
                                               **The Dacus Firm, P.C.**
                                               821 ESE Loop 323, Suite 430
                                               Tyler, Texas, 75701
                                               +1 (903) 705-1117
                                               +1 (903) 581-2543 facsimile
                                               ddacus@dacusfirm.com

                                               Matthew S. Warren (California Bar No. 230565)
                                               Robert Kang (California Bar No. 274389)
                                               Erika Warren (California Bar No. 295570)
                                               **Warren Lex LLP**
                                               2261 Market Street, No. 606
                                               San Francisco, California, 94114
                                               +1 (415) 895-2940
                                               +1 (415) 895-2964 facsimile
                                               20-40@cases.warrenlex.com

                                               *Attorneys for HMD Global Oy*

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 10th day of June, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).  Any other counsel of record will be served by a facsimile transmission and/or first class mail.

*/s/ Deron R. Dacus*
Deron R. Dacus