**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **TACTUS TECHNOLOGIES LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 2:20-CV-00040** |
| **v.** | § | |
| | § | |
| **HMD GLOBAL OY,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendant.** | § | |
| | § | |

**TACTUS'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**AND ALTERNATE REQUESTS FOR LIMITED DISCOVERY OR**
**AUTHORIZATION TO SERVE BY ALTERNATE MEANS**

Plaintiff Tactus Technologies LLC ("Tactus") files this response in opposition to
Defendant HMD Global Oy's ("HMD") motion to dismiss. In the alternative, Tactus requests
limited discovery into the relationship between HMD and HMD America, Inc. ("HMD America")
or authorization to serve by alternate means.

## TABLE OF CONTENTS

I.    SUMMARY OF ARGUMENT ................................................................................. 1

II.   FACTUAL BACKGROUND.................................................................................. 2

III.  ARGUMENTS AND AUTHORITIES...................................................................... 4

    A.   Tactus served a valid summons signed by the clerk and bearing the Court's seal. 4

    B.   Tactus served HMD in accordance with the Federal Rules.................................... 6

        i.   Tactus served HMD in a manner prescribed by Rule 4(e)(1) and thus satisfied

            Rule 4(h)(1)(A).............................................................................................. 7

            a.   Tactus served HMD in accordance with Florida law...................................... 7

            b.   Tactus served HMD in accordance with Texas law........................................ 9

        ii.   Tactus served HMD by delivering a copy of the summons and complaint to

            HMD's managing agent, HMD America. ......................................................... 13

    C.   Tactus's service via the Finnish Central Authority makes dismissal improper.... 14

    D.   In the alternative and in the interest of swift resolution, Tactus requests leave to

        serve HMD by alternate means.......................................................................... 14

IV.  CONCLUSION................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Affinity Labs of Tex., LLC v. Nissan N. Am. Inc.*,
  No. WA:13-cv-369, 2014 WL 11342502 (W.D. Tex. Jul. 2, 2014) ........................................ 15

*Blue Spike, LLC v. ASUS Computer Int'l, Inc.*,
  6:16-CV-1384-RWS-KNM, 2018 WL 3301705 (E.D. Tex. Feb. 20, 2018),
  report and recommendation adopted,
  6:16-CV-1384-RWS-KNM, 2018 WL 1443783 (E.D. Tex. Mar. 23, 2018) .......................... 10

*Bridgeport Music, Inc. v. Rhyme Syndicate Music*,
  376 F.3d 615 (6th Cir. 2004) ............................................................................................... 13

*Chandler v. Whiting Oil and Gas Corp.*,
  CV 17-118-BLG-SPW, 2018 WL 3062268 (D. Mont. June 20, 2018),
  appeal dismissed,
  18-35595, 2018 WL 5270463 (9th Cir. Oct. 18, 2018) ........................................................... 5

*Driving Force Techs., Inc. v. Panda Distrib., Inc.*,
  4:10-CV-24, 2012 WL 1645634 (E.D. Tex. May 10, 2012),
  report and recommendation adopted,
  4:10-CV-24, 2012 WL 13006169 (E.D. Tex. July 17, 2012) ................................................. 10

*Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*,
  No. 3:17-cv-01827-N, 2018 WL 3330022 (N.D. Tex. Mar. 16, 2018) ..................................... 6

*Gianna Enters. v. Miss World (Jersey) Ltd.*,
  551 F. Supp. 1348 (S.D.N.Y. 1982) ....................................................................................... 5

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  No. CV 09-02047, 2015 WL 13387769 (E.D. La. Nov. 9, 2015) ........................................... 14

*Jim Fox Enters., Inc. v. Air France*,
  664 F.2d 63 (5th Cir. 1981) ................................................................................................. 13

*Nylok Corp. v. Fastener World Inc.*,
  396 F.3d 805 (7th Cir. 2005) ............................................................................................... 14

*ProShipLine, Inc. v. M/V Beluga Revolution*,
  CIV.A. H-07-4170, 2008 WL 447707 (S.D. Tex. Feb. 19, 2008) ........................................... 13

*Traxcell Technologies, LLC v. Nokia Solutions & Networks US LLC*,
  No. 2:18-cv-00412-RWS-RSP, 2019 WL 8137134 (E.D. Tex. Oct. 22, 2019) ......................... 6

*United States v. Nat'l Muffler Mfg., Inc.*,
  125 F.R.D. 453 (N.D. Ohio 1989) ................................................................... 5

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988)......................................................................................... 6

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
  556 F.2d 406 (9th Cir. 1977) ......................................................................... 10

*WorldVentures Holdings, LLC v. Mavie*,
  No. 4:18-cv-393, 2018 WL 6523306 (E.D. Tex. Dec. 12, 2018) ........................... 14

**Statutes**

28 U.S.C. § 1694................................................................................................. 6

Fla. Stat. § 48.081(5) (2016) ......................................................................... 7, 9

**Rules**
FED. R. CIV. P. 4 .......................................................................................... 4, 6, 7, 13

## I.      SUMMARY OF ARGUMENT

Approximately three weeks after Tactus filed the Complaint, it delivered the summons and Complaint to the Finnish Central Authority to effect service on HMD pursuant to the Hague Convention. Tactus's diligence is well within the 90-day deadline prescribed by Rule 4(m). Upon learning that, due to the COVID-19 pandemic, the timeline for returns of service from the Finnish Central Authority had become unpredictable, Tactus explored other paths for service and possible waiver of service.

Upon investigation, Tactus located significant evidence that HMD maintains a presence in Miami, Florida, including an office that houses its agent, HMD America. Tactus then promptly served HMD at 1200 Brickell Avenue, Suite 510, Miami, Florida. Additionally, Tactus reached out multiple times to HMD via counsel, and offered to extend HMD's answer date in exchange for HMD's execution of a waiver of service. Offering no explanation, HMD refused all requests.

Even now, after being presented with evidence of Tactus's initial service via the Finnish Central Authority, HMD steadfastly refuses to withdraw its motion, requiring unnecessary waste of judicial resources. HMD cannot plausibly claim that it does not have notice of Tactus's complaint. Instead, HMD's conduct is an apparent effort to delay this action, and to further exacerbate delays in service caused by the COVID-19 pandemic. Rather than work cooperatively to overcome the challenges presented by the pandemic, HMD now attempts to secure an illegitimate and improper dismissal. The Court should deny HMD's motion to dismiss. Alternatively, Tactus requests limited discovery into the relationship between HMD and HMD America, Inc. ("HMD America") or, as a further alternative, authorization to serve HMD by alternate means.

## II.     FACTUAL BACKGROUND

Tactus filed suit against HMD on February 18, 2020. Dkt. No. 1. On the same day, the Clerk issued a signed summons bearing the Court's seal. On February 24, 2020, Tactus emailed Jari Koljonen, HMD's general counsel, hoping to open a dialog and arrange waiver of service; Mr. Koljonen did not respond. Ex. A. Tactus subsequently engaged a process server to serve HMD pursuant to the Hague. On March 12, the process server delivered the summons, the complaint and accompanying exhibit, and the civil cover sheet to the Finnish Central Authority for ultimate delivery to HMD. Ex. B, Hague Request; Ex. C, UPS tracking information. On April 13, the process server notified Tactus that, due to the COVID-19 pandemic, the timeline for returns of service had become unpredictable. Ex. D, Lukken email. As of the date of this filing, Tactus is still waiting to receive service returns from the Finnish Central Authority. Rastegar Decl. ¶ 2.

Given the unpredictable timeline associated with service via the Finnish Central Authority, Tactus began exploring other routes to serve HMD. On April 23, Tactus emailed Bill McCabe, counsel for HMD Global in *Monument Peak Ventures, LLC v. HMD Global OY*, Civil Action No. 2:18-cv-00521, to request a waiver of service. Ex. E, Rastegar/McCabe Correspondence. The correspondence explained that "[w]hile a process server delivered the necessary documents to the Central Authority in Finland shortly after each of these cases were filed, the Covid-19 pandemic has introduced significant and unpredictable delays." *Id*. In the correspondence, Tactus included the following materials: the summons, the complaint and accompanying exhibit, and the civil cover sheet. *Id*.; Rastegar Decl. ¶ 3. In addition, the correspondence included the completed forms for the Notice of Lawsuit and Request for Waiver of Service. Rastegar Decl. ¶ 3. After receiving Tactus's correspondence, Mr. McCabe stated that he would "pass [the request] along to HMD."

Ex. E. On May 5, after two follow-ups from Tactus, Mr. McCabe responded that he had not received instructions from HMD on how to proceed. *Id*.

On May 12, Tactus sent the summons and complaint to Special Delivery and requested that it serve HMD at the Miami location, which is 1200 Brickell Avenue, Suite 510, Miami, Florida. Rastegar Decl. ¶ 4. On May 20, the process server served HMD. Dkt. No. 5. After receiving the request to serve HMD, the process server made a notation of the address on the summons. Special Delivery Decl. ¶ 3.  Such a notation is a common practice. *Id.* This common practice helps ensure the process server goes to the correct location when effectuating service. *Id.* The process server's notation in no way obstructed any of the information on the signed, sealed summons issued by the Clerk. Thus, HMD received service of process on May 20, 2020.

Without conferring with Tactus or its counsel, and without making any effort to resolve this matter by any means other than Court intervention, HMD filed its motion to dismiss on June 10. *See* Dkt. No. 6. Notably, HMD filed its motion weeks after Tactus informed it that that "a process server delivered the necessary documents to the Central Authority in Finland shortly after [the case was] filed." Ex. E. Nevertheless, HMD's motion repeatedly—and incorrectly—claims Tactus did not attempt service of HMD via the Hague. *See* Dkt. No. 6 at pp. 8, 9, 13. Even after the parties discussed the matter on June 12, HMD's basis for claiming that Tactus did not attempt service via the Hague Convention remains unclear.

What is clear is HMD's motivation in filing the motion: delay. On February 24, when Tactus emailed HMD about this matter, HMD did not respond. *See* Ex. A. On April 23, when Tactus proposed a waiver of service, HMD did not respond to the request. Rastegar Decl. ¶ 5. On June 12, after Tactus again proposed resolving the present dispute via a waiver of service, HMD ignored the request. Instead, HMD merely proposed withdrawing this motion in exchange for

Tactus withdrawing the proof of service. Ex. F, Warren to Rastegar Email. On June 16, Tactus

reiterated its proposal to resolve the dispute and move the case forward via a waiver of service.

However, on June 19, HMD declined to execute a waiver of service declaring, without explanation,

that HMD "does not believe it appropriate to waive service under these circumstances." Ex. G,

Warren to Rastegar Email.

### III.    ARGUMENTS AND AUTHORITIES

HMD's challenge to personal jurisdiction is bootstrapped to its claims made under Rule

12(b), sections (4) and (5). Thus, if Tactus demonstrates proper process and service of process,

HMD's challenge to personal jurisdiction fails.

**A.     Tactus served a valid summons signed by the clerk and bearing the Court's seal.**

Rule 4(a) sets forth only seven requirements for a summons. FED. R. CIV. P. 4(a).[1] On

March 18, the clerk issued a signed and sealed summons. And there is no dispute that the summons

satisfies all seven requirements of Rule 4(a). On May 20, Tactus's process server delivered this

summons to HMD. Dkt. No. 5. The inquiry into sufficient process should end here.

The summons need only satisfy Rule 4(a). And nothing in the Rule even requires that the

summons list the address where service will take place. FED. R. CIV. P. 4(a). Nevertheless HMD

argues that a routine notation by a process server renders the summons insufficient. It does not;

the notation did not cause the summons to lose compliance with any requirement of Rule 4(a).

Further, the notation is not misleading, and it in no way obscures the information provided by the

summons. The process server effectuated service of a valid summons. *Chandler v. Whiting Oil*

---

[1] "A summons must: (A) name the court and the parties; (B) be directed to the defendant; (C) state
the name and address of the plaintiff's attorney or—if unrepresented—of the plaintiff; (D) state the
time within which the defendant must appear and defend; (E) notify the defendant that a failure to
appear and defend will result in a default judgment against the defendant for the relief demanded
in the complaint; (F) be signed by the clerk; and (G) bear the court's seal." FED. R. CIV. P. 4(a).

4

*and Gas Corp.*, CV 17-118-BLG-SPW, 2018 WL 3062268, at *1 (D. Mont. June 20, 2018), appeal dismissed, 18-35595, 2018 WL 5270463 (9th Cir. Oct. 18, 2018) (finding that a process server's notation does not invalidate a signed, sealed summons, even when the process server writes the *wrong* registered agent on the summons).

Notably, HMD's case law does not address a notation being added to the summons. HMD's reliance on *Gianna Enters. v. Miss World (Jersey) Ltd.*, 551 F. Supp. 1348 (S.D.N.Y. 1982), is misplaced. The *Gianna* court did not hold that a notation invalidates a summons. Instead, the court only held that a summons must be signed by the clerk and bear the court's seal, as required by Rule 4(a) and 4(b). *Id.* at 1358. The court in *Gianna* reasoned that delivering an unsigned and unsealed summons was problematic because it did not assure the recipient that the summons issued from a court. *Id. See also United States v. Nat'l Muffler Mfg., Inc.*, 125 F.R.D. 453, 455 (N.D. Ohio 1989) ("The provisions of Rule 4(b) are designed to assure a defendant that the summons was issued by the clerk of court and not by plaintiff or plaintiff's attorney."). Such concerns are not present here: the summons is signed and bears the Court's seal. HMD does not contend that it lacked notice that the summons was issued by the Court, not could it credibly do so.

Given that Tactus's process server, who has over 18 years of experience effectuating service, declared that it is common practice to note the location of service on the summons (Special Delivery Decl. ¶ 3), it is telling that HMD is unable to cite any case where such a notation invalidated the summons. The process server's customary notation did not invalidate that summons. And Tactus complied with Rule 4 by serving HMD a summons meeting all requirements of Rule 4.

**B.**      **Tactus served HMD in accordance with the Federal Rules.**

Although Tactus is currently effectuating service via the Hague Convention, HMD's assertion that Tactus "could serve HMD only through the Hague Convention" is unequivocally wrong. HMD heavily relies on the court's opinion in *Traxcell Technologies, LLC v. Nokia Solutions & Networks US LLC*, No. 2:18-cv-00412-RWS-RSP, 2019 WL 8137134 (E.D. Tex. Oct. 22, 2019), for the proposition that "Tactus could serve HMD only through the Hague Convention." Dkt. No. 6 at 8. HMD is mistaken. The *Traxcell* court merely held that the serving party must comply with the Hague Convention (in applicable countries) when effectuating service ***abroad***. *Traxcell*, 2019 WL 8137134, at *3. Likewise, HMD's suggestion that Rule 4(h) requires service in accordance with Rule 4(f) and that Rule 4(f) "requires service by 'any internationally agreed means … such as those authorized by the Hague Convention …'" is also mistaken. Dkt. No. 6 at 8. Instead, both Rule 4(h) and 4(f) contemplate numerous additional methods of service. *See* FED. R. CIV. P. 4(f), 4(h). *See also* 28 U.S.C. § 1694 (contemplating an additional method of service of process for nonresidents in patent infringement actions).

The Supreme Court has made clear that, where the method of service does not "requir[e] the transmittal of documents abroad, the Convention does not apply." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 694-95 (1988). Thus, the Hague Convention does not apply to the domestic service of a foreign corporation. *Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, No. 3:17-cv-01827-N, 2018 WL 3330022, at *5 (N.D. Tex. Mar. 16, 2018).

Indeed, the Rules authorize multiple methods for domestically serving a foreign corporation. Under Rule 4(h)(1)(A), a foreign corporation may be served in the United States in "a manner prescribed by Rule 4(e)(1) for serving an individual." FED. R. CIV. P. 4(h)(1)(A). Alternatively, a foreign corporation may be served in the United States "by delivering a copy of

the summons and of the complaint to … a managing or general agent." FED. R. CIV. P. 4(h)(1)(B).

To be effective, the service need only satisfy either subpart (A) or (B) of Rule 4(h)(1).

> i.    *Tactus served HMD in a manner prescribed by Rule 4(e)(1) and thus satisfied Rule 4(h)(1)(A).*

Rule 4(h)(1)(A) authorizes the service of a foreign corporation in a judicial district of the

United States "in the manner prescribed by Rule 4(e)(1) for serving an individual." FED. R. CIV.

P. 4(h)(1)(A). Rule 4(e)(1) provides that a party may be served in a judicial district of the United

States by "following state law for serving a summons in an action brought in courts of general

jurisdiction in the state where the district court is located or where service is made." FED. R. CIV.

P. 4(e)(1). Thus, Tactus may serve HMD by following state law for service in an action brought

in courts of general jurisdiction in either Florida or Texas.

> a.    <u>Tactus served HMD in accordance with Florida law.</u>

Florida Statute 48.081 governs service of a corporation and provides:

> 48.081    Service on corporation. –
>
> …
>
> (5) When a corporation engages in substantial and not isolated activities within this state, or has a business office within the state and is actually engaged in the transaction of business therefrom, service upon any officer or business agent while on corporate business within this state may personally be made, pursuant to this section, and it is not necessary in such case that the action, suit, or proceeding against the corporation shall have arisen out of any transaction or operation connected with or incidental to the business being transacted within the state.

Fla. Stat. § 48.081(5) (2016). HMD concedes that HMD America has a business office within

Florida and transacts business from that office. *See* Dkt. No. 6-3, ¶¶ 2, 4. Accordingly, Florida law

allows for service of HMD America's agents while on corporate business. HMD's motion

describes Cristian Capelli as an "Employee of HMD America Working at HMD America's Miami

Office." Dkt. No. 6 at 4. Thus, regardless of what Mr. Capelli subjectively *believes* (*see* Dkt. No. 6-1, ¶ 7), Florida law authorizes service of HMD America through him.

Moreover, HMD does not engage in mere isolated activities within Florida; HMD's activities within the state are substantial. According to HMD's website, it operates an office in Florida:



*See* HMD Homepage, https://www.hmdglobal.com (last visited June 24, 2020) (a true and correct portion is reproduced above, annotated to show HMD's Florida office).

HMD's vice president, Maurizio Angelone, offices in Florida and works from Miami:



8

*Compare* Maurizio Angelone Bio, HMD, https://www.hmdglobal.com/bio/maurizio-angelone (last visited June 24, 2020) *with* Maurizio Angelone, LinkedIn, https://www.linkedin.com/in/maurizio-angelone-358ba52 (last visited June 24, 2020) (true and correct portions of each (annotated) included above). Mr. Angelone publicly declared that "HMD Global [is on a] journey to deliver United States consumers a versatile line up of Nokia phones." Ex. I at p. 2. Mr. Angelone's role in this journey means that HMD engages in substantial (and not isolated) activities within Florida. Indeed, HMD has partnered with various cellular carriers in the United States. *See* Ex. H; Ex. J. And Mr. Angelone was involved in the formation of those partnerships. *See* Ex. H at 2; Ex. J at 2.

Similarly, HMD's founder and Executive Chairman, Jean-Francois Baril, lists 1200 Brickell Ave., Miami, FL as his office address in filings with the Florida Secretary of State. Ex. K, Baril Bio; Ex. L, 2020 Florida Annual Report. HMD admits to tasking HMD America with the sale of Nokia-branded cell phones in the United States, making HMD America an agent of HMD. *See* Dkt. No. 6-3, ¶ 4.

HMD's activities, as well as its offices in Florida, make it amenable to service pursuant to Florida Statute 48.081. *See* Fla. Stat. § 48.081(5) (2016). As such, HMD may be served through any business agent while on corporate business, including its wholly-owned subsidiary/agent HMD America. At a minimum, HMD America's General Manager of Retail and Business Development, Cristian Capelli, was acting as an agent on corporate business when he was served. Since Mr. Capelli's work aligns squarely with the work HMD assigns to HMD America, Tactus's service on HMD was proper.

<blockquote>b.   <u>Tactus served HMD in accordance with Texas law</u>.</blockquote>

"A domestic subsidiary not explicitly authorized as an agent for service by its foreign parent corporation is still capable of receiving service if 'a foreign corporation exercises such

control over the domestic subsidiary that the two entities are essentially one.'" *Blue Spike, LLC v. ASUS Computer Int'l, Inc.*, 6:16-CV-1384-RWS-KNM, 2018 WL 3301705, at *6 (E.D. Tex. Feb. 20, 2018), report and recommendation adopted, 6:16-CV-1384-RWS-KNM, 2018 WL 1443783 (E.D. Tex. Mar. 23, 2018). "Texas courts look at the following factors to determine whether the parent and subsidiary are alter egos of one another: (1) whether there are distinct adequately capitalized units; (2) whether daily operations are separate; (3) if formal barriers exist between management; (4) whether the corporations file consolidated tax returns; (5) whether the parent owns the subsidiary's stock; (6) whether the two share common officers and directors; (7) the extent to which books and accounts are separate; (8) whether the officers and directors of one corporation determine the policies of the other; (9) whether the corporations hold themselves out as the same corporation; and (10) whether they have separate shareholder and director meetings." *Id.* In considering these factors, it is important to note that "jurisdictional veil-piercing and substantive veil piercing have different elements of proof." *Driving Force Techs., Inc. v. Panda Distrib., Inc.*, 4:10-CV-24, 2012 WL 1645634, at *4 (E.D. Tex. May 10, 2012), report and recommendation adopted, 4:10-CV-24, 2012 WL 13006169 (E.D. Tex. July 17, 2012). For example, undercapitalization, "which is important to deciding whether to pierce the veil raised by a subsidiary corporation in order to hold the parent corporation liable for failure of the subsidiary to meet its debts, may not be relevant to a showing that the two corporations are in fact one [for purposes of analyzing jurisdiction]." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 421 (9th Cir. 1977); *Driving Force*, 2012 WL 1645634, at *4. Therefore, while substantive veil piercing, involves due process considerations that may not be overridden by statutes or the common law, jurisdictional veil piercing—as relevant here—invokes a less stringent standard. *See Driving Force*, 2012 WL 1645634 at *4.

Here, the facts support finding that HMD America is an alter ego of HMD for purposes of service of process. As an initial matter, HMD and HMD America hold themselves out to the public without any differentiation between the ostensibly separate corporations. HMD's website lists locations of HMD America as its own. *Supra* p. 8 (citing https://www.hmdglobal.com). HMD America's employees, including the declarants Messrs. Capelli and Fryhover, publicly proclaim themselves to be employees of "HMD Global," as opposed to HMD America or some other corporate shell:



Ex. M (annotated); Ex. N (annotated). Moreover, HMD posts job openings for its US locations, it issues public statements regarding "our business in the US" and it describes these positions as HMD Global positions:



Ex. O (annotated); Ex. P (annotated).

The corporate structure of HMD and its wholly owned subsidiary, HMD America, also favors a finding that HMD America is an alter ego of HMD. Indeed, the corporate officers and directors of HMD and HMD America largely overlap. For example, Sam Chin was HMD America's president and director from 2016 to 2019. Exs. Q - T. During that same timeframe, Mr. Chin was also HMD's Chairman of the Board. Ex. U. As another example, as of 2020, Jean-Francois Baril is HMD America's president and is simultaneously the Executive Chairman of the Board of HMD. Ex. L; Ex. K.  As a result of this overlap in leadership, HMD's officers and directors determine the policies for HMD America. Thus, Tactus's service was proper under Rule 4(h)(1)(A), under either Florida or Texas law.

There is ample evidence from which the Court may find that HMD America is an alter ego of HMD. Thus, Tactus's service was proper under Texas law. Nevertheless, if the Court deems it necessary, Tactus requests leave to conduct limited discovery into the nature of the relationship between HMD and HMD America.

ii.   *Tactus served HMD by delivering a copy of the summons and complaint to HMD's managing agent, HMD America.*

In addition to Tactus's proper service under Rule 4(h)(1)(A), Tactus also properly effectuated service under Rule 4(h)(1)(B). Rule 4(h)(1)(B) authorizes service of a foreign corporation "by delivering a copy of the summons and of the complaint to … a managing or general agent." FED. R. CIV. P. 4. "A managing agent is one authorized to transact all business of a particular kind at a particular place and must be vested with powers of discretion rather than being under direct superior control." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 624 (6th Cir. 2004); *ProShipLine, Inc. v. M/V Beluga Revolution*, CIV.A. H-07-4170, 2008 WL 447707, at *2 (S.D. Tex. Feb. 19, 2008). In addressing the definition of "managing agent" the Fifth Circuit echoed this explanation. *Jim Fox Enters., Inc. v. Air France*, 664 F.2d 63, 64 (5th Cir. 1981) ("[A]ny possible future problems will revolve around the definition of 'managing or general agent'. In the volumes of decisions that analyze that very question, the courts have established the proposition that one invested with general powers involving the exercise of independent judgment and discretion is such an agent.").

HMD acknowledges HMD America's status as its managing agent. HMD contends that HMD America is tasked with the sale of mobile devices in the United States. Dkt. No. 6-3, ¶ 4. HMD further contends that it "does not control HMD America's daily operations or policies, and HMD America employs its own leadership team." *Id.* at ¶ 5. In other words, HMD contends that HMD America is authorized to transact all business related to the sale of its mobile devices in the United States and has its own leadership team vested with the powers of discretion. This is the definition of a managing agent. Thus, Tactus served HMD when it delivered the summons and complaint to HMD's managing agent—HMD America.

13

C.      **Tactus's service via the Finnish Central Authority makes dismissal improper.**

Even if the Florida service were deficient (it was not), the pending service pursuant to the Hague Convention makes dismissal improper. Tactus delivered the summons and complaint to the Finnish Central Authority three weeks after the complaint was filed. *See* Ex. B; Ex. C. Rule 4(m) simply requires that Tactus lodge a request with the foreign country's Hague Central Authority within 90 days of filing. *See Nylok Corp. v. Fastener World Inc.*, 396 F.3d 805, 807 (7th Cir. 2005). Tactus met this requirement. Thus, as HMD is aware, Tactus has properly initiated service via the Hauge Convention.

Indeed, in the parties' subsequent communications, HMD concedes that the pending service via the Finnish Central Authority will moot its motion to dismiss. Ex. G. HMD should not have filed its motion knowing that Tactus was in the process of serving it via the Hague (Ex. E), but to maintain its motion after receiving the documents demonstrating the service suggests a desire to cause delay and waste resources.

D.      **In the alternative and in the interest of swift resolution, Tactus requests leave to serve HMD by alternate means.**

Although Tactus believes it has properly served HMD, Tactus's objective is to adjudicate this case on the merits in an expeditious manner. To that end, Tactus requests the Court grant leave to serve via alternate means pursuant to Federal Rule of Civil Procedure 4(f)(3). Specifically, Tactus seeks leave to serve the summons and complaint on foreign defendant HMD Global Oy via its United States counsel that have appeared in this case. The proposed alternate service comports with due process because HMD has actual notice of, and is actively participating in, this action. *See WorldVentures Holdings, LLC v. Mavie*, No. 4:18-cv-393, 2018 WL 6523306 (E.D. Tex. Dec. 12, 2018) (citing *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. CV 09-02047, 2015 WL 13387769, at *7 (E.D. La. Nov. 9, 2015). While Tactus is attempting service via the Hague

Convention under Rule 4(f)(1), the timeline for such service is unpredictable due to the COVID-19 pandemic. Ex. D. To date, Tactus has received no indication as to when its submissions to the Finnish Central Authority will be ultimately served on HMD. Under these facts, the delay and uncertainty of effectuating service process through the Hague Convention justifies alternate service. Indeed, when international service presents lengthy delays and unpredictable timelines, courts routinely permit alternate service. *See Affinity Labs of Tex., LLC v. Nissan N. Am. Inc.*, No. WA:13-cv-369, 2014 WL 11342502, at *3 (W.D. Tex. Jul. 2, 2014) (finding that courts routinely permit alternative service due to the delay and expense associated with service under the Hague Convention) (collecting cases). As such, as a further alternative, Tactus requests leave to serve HMD through its counsel of record in this case.

### IV.    CONCLUSION

HMD's motion should be denied. The summons that Tactus served was signed by the clerk, bore the Court's seal, and otherwise met all requirements of Rule 4(m). Moreover, Tactus's method of service complied with the Rules. Alternatively, should the Court have questions regarding the sufficiency of service Tactus requests either discovery into the nature of the relationship between HMD and HMD America or authorization to serve by alternative means.

Dated: June 24, 2020

Respectfully submitted,

/s/ *Jonathan H. Rastegar*
Jeffrey R. Bragalone (lead attorney)
Texas Bar No. 02855775
Jonathan H. Rastegar
Texas Bar No. 24064043

**BRAGALONE CONROY PC**
2200 Ross Avenue
Suite 4500W
Dallas, TX 75201
Tel: (214) 785-6670
Fax: (214) 785-6680
jbragalone@bcpc-law.com
jrastegar@bcpc-law.com

Attorneys for Plaintiff
**TACTUS TECHNOLOGIES LLC**

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel complied with Local Rule CV-7(h).  On June 23, 2020, the parties met and conferred via telephone regarding the requests for limited discovery and for service by alternate means. The parties discussed their respective positions and were unable to reach resolution.

/s/ *Jonathan H. Rastegar*
Jonathan H. Rastegar

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 24, 2020.

/s/ *Jonathan H. Rastegar*
Jonathan H. Rastegar