**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| TACTUS TECHNOLOGIES, LLC, | § | |
| | § | Case No.  2:20-cv-00040-JRG-RSP |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| HMD GLOBAL OY, | § | |
| | § | |
| Defendant. | § | |

**REPLY IN SUPPORT OF MOTION TO DISMISS FOR
INSUFFICIENT PROCESS, INSUFFICIENT SERVICE OF
PROCESS, AND LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

**Pages**

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     Tactus' Summons Was Neither Issued by the Court Nor Signed by the Clerk. . . . . . . . . 1

II.    HMD America Is Neither an Alter Ego Nor a Managing Agent of HMD Global. . . . . . 3

      A.     Under This Court's Recent Ruling in *Fellowship Filtering Technologies*, HMD America Cannot Be an Alter Ego of HMD Global Even if Every Allegation in Tactus' Opposition Is Correct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.     Tactus' "Managing Agent" Theory Would Undermine the Corporate Form and, Not Surprisingly, Finds No Support in the Law. . . . . . . . . . . . . . . . . . . . . . . 7

III.   The Court Should Not Allow Tactus to Evade the Rules By "Alternative Service". . . . . 8

      A.     Service in Finland Through the Hague Convention Is Not Burdensome. . . . . . . . 8

      B.     Tactus Cannot Bootstrap Its Way to Alternative Service. . . . . . . . . . . . . . . . . . . . 9

IV.   The Court Should Not Order Jurisdictional Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . 10

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

*Cases*             **Pages**

*Alpine View Co. v. Atlas Copco AB*,
    205 F.3d 208 (5th Cir. 2000)............................................................. 10

*AT&T Co. v. Compagnie Bruxelles Lambert*,
    94 F.3d 586 (9th Cir. 1996)................................................................ 4

*Blue Spike, LLC v. ASUS Comput. Int'l, Inc.*,
    No. 16-1384, 2018 WL 3301705 (E.D. Tex. Feb. 20, 2018).......................7

*Blue Spike, LLC v. ASUS Comput. Int'l, Inc.*,
    No. 16-1384, 2018 WL 1443783 (E.D. Tex. Mar. 23, 2018)......................7

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
    253 F.3d 865 (5th Cir. 2001)............................................................ 6

*Chandler v. Whiting Oil and Gas Corp.*,
    No. 17-118, 2018 WL 3062268 (D. Mont. Jun. 20, 2018)....................... 2

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
    399 F.3d 651 (6th Cir. 2005)............................................................ 4

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)........................................................................7

*Driving Force Techs., Inc. v. Panda Distrib., Inc.*,
    No. 10-24, 2012 WL 1645634 (E.D. Tex. May 10, 2012).....................4,5

*Driving Force Techs., Inc. v. Panda Distrib., Inc.*,
    No. 10-24, 2012 WL 13006169 (E.D. Tex. July 17, 2012).......................4

*Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*,
    No. 15-2049, 2016 WL 6917272 (E.D. Tex. Sep. 1, 2016).................4, 5, 6

*Ganpat v. E. Pac. Shipping, Pte. Ltd.*,
    434 F. Supp. 3d 441 (E.D. La. 2020)....................................................7

*Ganpat v. E. Pac. Shipping, Pte. Ltd.*,
    No. 18-13556, 2020 WL 1046336 (E.D. La. Mar. 4, 2020).......................7

*Implicit, LLC v. NetScout Sys., Inc.*,
    No. 18-53, 2019 WL 127115 (E.D. Tex. Jan. 8, 2019)............................6

## **TABLE OF AUTHORITIES**

*Cases* **Pages**

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
    No. 09-2047, 2015 Wl 13387769 (E.D. La. Nov. 9, 2015). . . . . . . . . . . . . . . . . . . . . . . . 9

*Jim Fox Enters., Inc. v. Air France*,
    664 F.2d 63 (5th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*LBS Innovations, LLC v. Nokia USA Inc.*,
    No. 15-1972, 2016 WL 3407611 (E.D. Tex. Jun. 21, 2016). . . . . . . . . . . . . . . . . . . . . . 7

*QR Spex, Inc. v. Motorola, Inc.*,
    507 F. Supp. 2d 650 (E.D. Tex. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Taishan Gypsum Co. v. Gross (In re Chinese-Manufactured Drywall Prods. Liab. Litig.)*,
    753 F.3d 521 (5th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Nat'l Muffler Mfg., Inc.*,
    125 F.R.D. 453 (N.D. Ohio 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Whidbee v. Pierce Cty.*,
    857 F.3d 1019, 1023 (9th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*WorldVentures Holdings, LLC v. Mavie*,
    No. 18-393, 2018 Wl 6523306 (E.D. Tex. Dec. 12, 2018). . . . . . . . . . . . . . . . . . . . . . . 9

## **TABLE OF AUTHORITIES**

*Statutes and Rules* **Pages**

Fed. R. Civ. P. 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

Fed. R. Civ. P. 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

L.R. CV-7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Other Authorities*

Hague Convention on Service Abroad of Judicial and Extrajudicial Documents,
    Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638. . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## INTRODUCTION

Tactus would like to eat its cake and have it too.  Tactus chose to sue HMD Global, a Finnish company, rather than HMD America in Florida.  That choice has consequences:  Tactus must serve HMD Global through the Hague Convention.  Those consequences are not severe, because the Finnish central authority is quite efficient and often completes Hague Convention service in a matter of weeks.  But Tactus sought to avoid even these consequences of its choice by purporting to serve a self-help summons on HMD America, a company it strategically excluded from this lawsuit, and claiming that summons effected service on HMD Global.

Once challenged by HMD Global's motion to dismiss, Tactus now admits that it served only HMD America, but claims it still reached HMD Global under two theories that directly conflict with each other—first, that HMD America and HMD Global "are essentially one" entity and HMD Global controls everything about HMD America; and, second, that HMD America is entirely independent "rather than being under direct superior control."  These contradictory arguments have only one thing in common:  Tactus' desire to avoid the consequences of its choices.  But the law does not allow this escape, and this Court should not either.

## ARGUMENT

**I.    Tactus' Summons Was Neither Issued by the Court Nor Signed by the Clerk**

Tactus purported to serve a summons that was neither issued by the Court nor signed by the clerk, and was thus invalid under Fed. R. Civ. P. 12(b)(4).  *See* Mot. § C, II.  In response, Tactus argues that its self-help alteration was a mere "notation," and that such "notations" are routine.  *E.g.*, Opp. at 4.  Neither of Tactus' assertions is correct, and its arguments thus fail.

Tactus tries to cast its preparation of a new summons as a mere "notation."  *E.g.*, *id*.  But Tactus changed not only the document it filed with the Court, but also the copy it purported to

serve.  *Compare* Docket No. 4 *with* Docket No. 6-2.  If Tactus wanted (as it now claims) only to "ensure the process server goes to the correct location when effectuating service," Opp. at 3, it could have written the address on a sticky note, or a separate piece of paper, or anywhere other than the summons issued by the Court.  Tactus chose instead to add a self-help address, and to 'serve' a 'summons' bearing it.  *See* Mot. § C.  It cannot evade the consequences of that choice.

Tactus next argues that its self-help modification does not render the summons invalid because it is common practice.  *See* Opp. at 4-5.  This argument fails on the law and the facts.  On the law, Tactus cites *United States v. Nat'l Muffler Mfg., Inc.*, 125 F.R.D. 453, 455 (N.D. Ohio 1989), *see* Opp. at 5, but that case compels dismissal here.[1]  As *National Muffler* explained, although "plaintiffs should not be denied their day in court because of a technical oversight, . . . . [d]efects, however, that result in prejudice to defendant or reflect a party's disregard for the requirements of the federal rules are generally not considered curable by amendment."  125 F.R.D. at 455.  On the facts, Tactus' argument that it did not disregard the rules depends on a declaration stating that "not[ing] the location of service on the summons" is a "common practice."  Docket No. 11-2 ¶ 3.  But this declaration comes not from the process server in Florida who purported to serve the summons, but from an employee of a company in Texas which merely passed the papers along.  *See id.*; Docket No. 5.  The declarant has no firsthand knowledge of what happened and perhaps no knowledge at all:  he can state only that "*[i]t is my understanding* that the process server noted the location of service on the summons."  *Id.* (emphasis added).  The declarant then opines without explanation that "[t]his is a common

---

[1] Tactus also cites *Chandler v. Whiting Oil and Gas Corp.*, No. 17-118, 2018 WL 3062268 (D. Mont. June 20, 2018), *see* Opp. at 4-5, but that action was removed from Montana state court and, as *Chandler* itself noted, "[w]hen a case is removed from state court to federal court, the question whether service of process was sufficient prior to removal is governed by state law." 2018 WL 3062268, at *1 (quoting *Whidbee v. Pierce Cty.*, 857 F.3d 1019, 1023 (9th Cir. 2017)).  The *Chandler* Court's discussion of Montana state law has no bearing on this Federal question action.

practice," *id.*, but it is not. HMD Global reviewed the docket for every case filed in this Courthouse from January 1 through March 17, 2020, the date of filing of the *CCE v. HMD* case. Of those 76 dockets—the first 78 cases of this year, minus the *CCE* and *Tactus* complaints against HMD Global—29 included one or more returns of service, with a total of 56 summonses returned to the Court.[2] Of those 56 summonses, *none* included self-help addresses of the kind Tactus and its declarant claim is a "common practice," which it evidently is not. *Id.* The factual underpinnings of Tactus' argument thus collapse, and its argument with them.

## II.  HMD America Is Neither an Alter Ego Nor a Managing Agent of HMD Global

Even if Tactus' summons were properly issued by the Court and signed by the clerk, this action still could not proceed because Tactus failed to serve HMD Global at all. Throughout its brief, Tactus does not claim it served HMD Global directly, nor could it. Instead, Tactus asserts that it served HMD America, Inc., a subsidiary of HMD Global, and argues that this service was

---

[2] *Tackett v. Joiner*, Case No. 20-2, Docket Nos. 4, 5; *Salazar v. AT&T Mobility LLC*, Case No. 20-4, Docket Nos. 7, 8, 9, 10; *Tigert v. Rogers*, Case No. 20-5, Docket Nos. 3, 4, 5; *Team Worldwide Corp. v. Sears, Roebuck and Co.*, Case No. 20-6, Docket Nos. 9, 10, 11; *Lee Transervices, Inc. v. Cent. Mut. Ins. Co.*, Case No. 20-8, Docket No. 7; *Earl v. Generac Power Sys., Inc.*, Case No. 20-10, Docket No. 4; *Traxxas, L.P. v. eGrandbuy, Inc.*, Case No. 20-12, Docket No. 10; *Whirlpool Props., Inc. v. Patriot Supply, Inc.*, Case No. 20-14, Docket No. 8; *Monarch Networking Sols. LLC v. Cisco Sys., Inc.*, Case No. 20-15, Docket Nos. 12, 13; *S3G Tech. LLC v. Whataburger Rests. LLC*, Case No. 20-16, Docket No. 5; *VARTA Microbattery GmbH v. Samsung Elecs. Am., Inc.*, No. 20-29, Docket No. 6; *Huawei Techs. Co. Ltd. v. Verizon Commc'ns, Inc.*, Case No. 20-30, Docket Nos. 10, 11, 12, 13, 14, 15, 16; *Tactus Techs., LLC v. Samsung Elecs. Co., Ltd.*, Case No. 20-35, Docket No. 5; *Pulkrabek v. Toyota Motor Sales, USA, Inc.*, Case No. 20-36, Docket No. 3; *Nanoco Techs. Ltd. v. Samsung Elecs. Co., Ltd.*, Case No. 20-38, Docket Nos. 7, 8, 9, 10, 11; *Radney v. Holmes Co. of Jackson*, Case No. 20-39, Docket No. 3; *Hayes v. Richardson Enters., Inc.*, Case No. 20-41, Docket Nos. 3, 5; *Rodriguez v. Hoggard*, Case No. 20-47, Docket Nos. 9, 10; *Bell Semiconductor, LLC v. Tex. Instruments Inc.*, Case No. 20-48, Docket No. 10; *VARTA Microbattery GmbH v. Costco Wholesale Corp.*, Case No. 20-51, Docket No. 8; *VARTA Microbattery GmbH v. Amazon.com, Inc.*, Case No. 20-52, Docket No. 8; *VARTA Microbattery GmbH v. Best Buy Co., Inc.*, Case No. 20-54, Docket No. 8; *Timmons v. Concord Healthcare, LLC.*, Case No. 20-56, Docket No. 9; *Vista Peak Ventures, LLC v. Fujifilm Holdings Corp.*, Case No. 20-64, Docket Nos. 6, 7; *id.*, Case No. 20-65, Docket Nos. 6, 7; *id.*, Case No. 20-66, Docket Nos. 6, 7; *The Hillman Grp., Inc. v. KeyMe, LLC*, Case No. 20-70, Docket No. 10; *Capella Photonics, Inc. v. Fujitsu Network Commc'ns, Inc.*, Case No. 20-76, Docket No. 11; *Capella Photonics, Inc. v. Infinera Corp.*, Case No. 20-77, Docket Nos. 12, 13, 14, 15.

effective against HMD Global under two conflicting legal theories: first, that the relationship between HMD Global and HMD America is *so close* that "the two entities are essentially one" and thus "HMD America is an alter ego" of HMD Global (Opp. at 9-10), and, second, that the relationship between HMD Global and HMD America is *so distant* that the latter is "vested with powers of discretion rather than being under direct superior control" and thus HMD America is HMD Global's "managing agent." *Id.* at 13. The law allows neither argument.

> A. **Under This Court's Recent Ruling in *Fellowship Filtering Technologies*, HMD America Cannot Be an Alter Ego of HMD Global Even if Every Allegation in Tactus' Opposition Is Correct**

Tactus tries to gin up a factual dispute over whether HMD America can be an alter ego of HMD Global. *See* Opp. at 7-12. But even if every allegation in Tactus' Opposition is entirely correct, under this Court's ruling in *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, No. 15-2049, 2016 WL 6917272 (E.D. Tex. Sept. 1, 2016), HMD America *still* cannot be an alter ego of HMD Global and thus Tactus *still* cannot serve HMD Global through HMD America.[3]

---

[3] In an attempt to argue that the jurisdictional standard for alter ego is lower than other types of alter ego cases, Tactus directly misstates a prior holding of this Court. Tactus argues that "it is important to note that 'jurisdictional veil-piercing and substantive veil piercing have different elements of proof.'" Opp. at 10 (citing *Driving Force Techs., Inc. v. Panda Distrib., Inc.*, Case No. 10-24, 2012 WL 1645634, at *4 (E.D. Tex. May 10, 2012), *report and recommendation adopted*, 2012 WL 13006169 (E.D. Tex. July 17, 2012). Tactus then cites *Driving Force* as holding that the jurisdictional standard is *lower* than the standard in other areas: "while substantive veil piercing, involves due process considerations that may not be overridden by statutes or the common law, jurisdictional veil piercing—as relevant here—invokes a less stringent standard." Opp. at 10 (citing *Driving Force*, 2012 WL 1645634, at *4). Tactus' claim that "jurisdictional veil piercing . . . invokes a less stringent standard" does not quote from *Driving Force* or any other case, and for good reason: it is flatly incorrect. *Driving Force* and the cases it collects *do* mention due process, and *do* require a higher standard, but do so in *jurisdictional* cases involving alter ego and *not* other cases. *See Driving Force*, 2012 WL 1645634, at *4 ("Personal jurisdiction has constitutional dimensions, and regardless of policy goals, Congress cannot override the due process clause, the source of protection for non-resident defendants.") (quoting *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)); *Driving Force*, 2012 WL 1645634, at *4 ("This makes sense in light of the fact that personal jurisdiction involves due process considerations that may not be overridden by statutes or the common law.") (citing *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 667-68 (6th Cir. 2005)). Indeed, *Driving Force* granted a motion to dismiss against allegations of alter ego, reminding the plaintiff that "the degree of control the parent exercises must be

In *Fellowship Filtering*, defendant Alibaba.com, Inc. moved to dismiss for lack of personal jurisdiction. 2016 WL 6917272, at *1. Plaintiff sought "to impute the contacts of the 'Alibaba Group' to Alibaba.com, Inc. under theories of agency and alter ego," and thus sought to show that Alibaba.com, Inc. was an alter ego of the "Alibaba Group." *Id.*; *see id.* at *4-*5. This Court found no alter ago and granted the motion to dismiss, despite plaintiff's assertions that:

> (1) assets were transferred between Alibaba.com, Inc. and the "Alibaba Group" for no agreed-to consideration; (2) Alibaba.com, Inc. and the "Alibaba Group" shared the same controlling member; (3) the "Alibaba Group" maintained approval authority over any business partnership of Alibaba.com, Inc.; (4) the "Alibaba Group" approved budget requests made by Alibaba.com, Inc.; (5) the "Alibaba Group" holds out Alibaba.com, Inc. as being part of a tightly integrated "Alibaba Group"; (6) Alibaba.com, Inc. employees gave presentations in which they identified themselves as being part of the "Alibaba Group"; (7) the Alibaba entities operate as a single unit and each of the Alibaba entities act as an agent of the other Alibaba entities; and (8) the "Alibaba Group" exercises control over Alibaba.com, Inc.

*Id.* at *4. The Court found that plaintiff showed "nothing more than a typical parent-subsidiary corporate relationship," and specifically noted that "identity of officers and directors, even coupled with other indicia of alter ego status, is not a sufficient basis to impute contacts of a third party to the defendant." *Id.* The Court also found that "the fact that a parent company may exercise some degree of control over its subsidiaries does not demonstrate that the corporate form should be disregarded for purposes of personal jurisdiction," and that "review of certain budget requests or potential business partnerships pursuant to a contractual agreement does not demonstrate 'parental control' that 'pervades' the agent's dealings with Texas." *Id.* (citing *Taishan Gypsum Co. v. Gross (In re Chinese-Manufactured Drywall Prods. Liab. Litig.)*, 753 F.3d 521, 532 (5th Cir. 2014)). Finally, the Court noted that "even one hundred percent

---

greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *Id*. at *5. Tactus' explication of *Driving Force* is exactly backwards.

ownership of a subsidiary is not a sufficient basis to disregard the corporate form," 2016 WL 6917272, at *5 (citing *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 663 (E.D. Tex. 2007)), and that "broad, sweeping statements" in public forums "indicating that the Alibaba entities are 'closely integrated'" were mere "conclusory statements" that, "without more, do not counsel in favor of disregarding the corporate form." 2016 WL 6917272, at *5 (citing *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)).

Tactus attempts to show an alter ego relationship between HMD Global and HMD America, but it succeeds only in showing that it has no hope of prevailing under *Fellowship Filtering* and this Court's other cases. With great fanfare, Tactus presents "broad, sweeping statements" in public forums "indicating that the [HMD] entities are 'closely integrated'" (*Fellowship Filtering*, 2016 WL 6917272, at *4; *see* Opp. at 8, 10-12); indications that "[HMD America] employees gave presentations in which they identified themselves as being part of the "[HMD Global] Group" (2016 WL 6917272, at *4; *see* Opp. at 8-9, 11-12); some evidence of "identity of officers and directors" (2016 WL 6917272, at *4; *see* Opp. at 9, 12); and finally some evidence that HMD Global exercises "some degree of control over its subsidiaries." 2016 WL 6917272, at *4; *see* Opp. at 9, 12).[4] None of this is remarkable; all of it is routine in modern multinational companies—and, most importantly, this Court has repeatedly ruled that all of it, even taken together, is insufficient to show an alter ego relationship.[5]

---

[4] Tactus does not contest, or even suggest any reason why it might be able to contest, any of HMD Global's evidence, including that "HMD Global does not control HMD America's daily operations or policies, and HMD America employs its own leadership team," Docket No. 6-3 ¶ 5; "[t]he companies hold separate board meetings, do not share management, and employ different people," *id.*; "HMD Global and HMD America operate in separate countries, under separate bylaws, keep separate financial statements and separate books and records, and file separate tax returns," *id.* ¶ 6; and "HMD America does not accept service of process for HMD Global, and is not authorized to do so." *Id.* ¶ 7.

[5] *See Fellowship Filtering*, 2016 WL 6917272, at *4-*5 ("The evidence [plaintiff] relies on to support these allegations demonstrates nothing more than a typical parent-subsidiary corporate relationship."); *see also, e.g., Implicit, LLC v. NetScout Sys., Inc.*, No. 18-53, 2019 WL 127115, at *2

### B. Tactus' "Managing Agent" Theory Would Undermine the Corporate Form and, Not Surprisingly, Finds No Support in the Law

After claiming that HMD America and HMD Global are "essentially one," *see supra* § II.A, Tactus abruptly reverses course to argue that HMD America has so *much* freedom that it qualifies as a "managing agent" under Rule 4(h)(1)(B). Tactus relies on an aged Fifth Circuit case, *Jim Fox Enterprises, Inc. v. Air France*, 664 F.2d 63, 64 (5th Cir. 1981). "Following *Jim Fox*, few courts in this circuit have applied the definition of a 'managing agent' in the context of Rule 4(h)(1)(B)." *Ganpat v. E. Pac. Shipping, Pte. Ltd.*, 434 F. Supp. 3d 441, 459 (E.D. La. 2020), *reconsideration denied*, No. 18-13556, 2020 WL 1046336 (E.D. La. Mar. 4, 2020). HMD Global has found no cases—and Tactus has submitted none—that use the "managing or general agent" provision in Rule 4(h)(1)(B) to allow service through a subsidiary, and for good reason: Tactus' novel understanding of Rule 4(h)(1)(B) would undermine the corporate form by punishing independence, since a subsidiary with *more* independence would be *more* vulnerable to service as a "managing agent." Recognizing this danger, the Supreme Court recently rejected a similar argument, reversing the Ninth Circuit's ruling that a subsidiary was the agent of its parent, thus allowing personal jurisdiction over both entities. *See Daimler AG v. Bauman*, 571 U.S. 117, 135-36 (2014) ("The Ninth Circuit's agency theory thus appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in *Goodyear*."). Tactus has provided no law to support its request for an open season on subsidiary corporations, and this Court should not declare one.

---

(E.D. Tex. Jan. 8, 2019); *Blue Spike, LLC v. ASUS Comput. Int'l, Inc.*, No. 16-1384, 2018 WL 3301705, at *7-*8 (E.D. Tex. Feb. 20, 2018), *report and recommendation adopted*, 2018 WL 1443783 (E.D. Tex. Mar. 23, 2018); *LBS Innovations, LLC v. Nokia USA Inc.*, No. 15-1972, 2016 WL 3407611, at *4 (E.D. Tex. June 21, 2016).

### III. The Court Should Not Allow Tactus to Evade the Rules By "Alternative Service"

Having failed to serve HMD Global, Tactus asks the Court for a 'get out of jail free' card: an order allowing service on HMD Global's counsel, once again freeing Tactus from the consequences of its own strategic choices. The Court should, again, decline this invitation.

#### A. Service in Finland Through the Hague Convention Is Not Burdensome

There are many foreign countries in which service through the Hague Convention is slow and difficult. Finland is not one of them. To the contrary, service in Finland through the Hague Convention generally takes 15-40 days from the filing of a request for service.[6] This brief time poses no burden or even delay, as Tactus has already admitted by giving defendants in other matters much longer extensions, not to mention offering HMD Global itself an extension until September.[7] Tactus claims that "the timeline for such service is unpredictable due to the COVID-19 pandemic," Opp. at 15, but supports this assertion only with a hearsay email from its own subcontractor, which makes vague claims about the pandemic slowing service, and does not address or even mention Finland. *See* Docket No. 11-5. Without evidence of a slowdown in Finland—or evidence of anything at all, given its reliance on hearsay—Tactus cannot credibly claim that service through the Hague Convention poses a burden.

---

[6] There is no central list of cases against Finnish companies but, by looking at its own cases and searching PACER dockets, HMD Global found a good sample. Service under the Hague Convention took 41 days from the filing of the request in *Monument Peak Ventures, LLC v. HMD Global Oy*, Case No. 18-521, Docket No. 8 (E.D. Tex. Jan. 15, 2019); 28 days from the filing of the request in *Elardi v. I.S. Makinen Oy*, Case No. 19-22229, Docket No. 9 (S.D. Fla. Aug. 21, 2019); 14 days from the filing of the request in *Pravettone v. Cargotec Oyj*, Case No. 13-11716, Docket No. 11 (E.D. Mich. May 17, 2013); 14 days from the filing of the request in *Brightstar Corp. v. Geosentric Oyj*, Case No. 08-20447, Docket No. 36 (S.D. Fla. Nov. 24, 2008); and 28 days from the filing of the *complaint* in *Innovative Piledriving Prods. LLC v. Unisto Oy*, Case No. 04-453, Docket No. 11 (N.D. Ind. Jan. 24, 2005).

[7] *See* Docket No. 15-8; *Cellular Commc'ns Equip. LLC v. One Plus Tech. Co. Ltd*, Case No. 20-79, Docket Nos. 15, 16, 17, 21 (E.D. Tex.) (extending Rule 12 deadline by a total of 117 days, from June 5 to September 30); *Cellular Commc'ns Equip. LLC v. TCL Corp.*, Case No. 20-80, Docket Nos. 7, 8, 18 (E.D. Tex.) (extending Rule 12 deadline by a total of 151 days, from April 9 to September 7).

### B. Tactus Cannot Bootstrap Its Way to Alternative Service

Showing chutzpah if nothing else, Tactus argues that alternative service "comports with due process because HMD has actual notice of, and is actively participating in, this action." Opp. at 14. But HMD Global is "participating" in this action only because Tactus filed an improper return of service, thus triggering HMD Global's time to respond. *See* Mot. at 1; Docket No. 5. Under Tactus' logic, once the plaintiff filed a return of service, no matter how spurious, the defendant would face an impossible choice: either challenge the return of service under Rule 12 (thus "participating" in the action and subjecting itself to "alternative service") or do nothing (thus subjecting itself to default). By deeming a challenge to improper service as sufficient to justify alternative service, Tactus would have the exception swallow the rule.

No law supports this attempt to upset the careful balance of Rule 4, as Tactus' own cases show. Tactus cites *WorldVentures Holdings, LLC v. Mavie*, No. 18-393, 2018 WL 6523306 (E.D. Tex. Dec. 12, 2018), which cites *In re Chinese-Manufactured Drywall Products Liability Litigation*, No. 09-2047, 2015 WL 13387769 (E.D. La. Nov. 9, 2015), but neither case helps Tactus here. In *WorldVentures Holdings*, the plaintiff properly served some of the defendants, *see id.* at *13, and the other defendants had, by the time of the Court's decision, filed at least three emergency motions seeking relief from the same Court, thus "actively participating in this action" far beyond any requirement. *See id.*, Case No. 18-393, Docket Nos. 24, 27, 33 (E.D. Tex.). *Chinese-Manufactured Drywall Products* turned on the Court's findings that the "action has already been underway for more than six years," and that "it may take several years to successfully serve the" defendants under the Hague Convention, given delays to that process in China. 2015 WL 13387769, at *5. Tactus cannot show remotely similar circumstances here,

where the Finnish central authority responsible for serving HMD Global operates with commendable dispatch. *See supra* § III.A.

### IV. The Court Should Not Order Jurisdictional Discovery

Tactus briefly and without citation requests jurisdictional discovery, *see* Opp. at 1, 12, 15; the Court should deny this cursory request. Courts have not allowed such discovery "where discovery sought could not have added any significant facts," *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000), and this is just such a case. Even if all of Tactus' factual assertions are entirely correct, the law does not allow it to serve HMD Global through HMD America, *see supra* § II, and thus discovery would serve no purpose except delay.[8]

### **CONCLUSION**

For the foregoing reasons and those in its opening brief, HMD Global respectfully requests that the Court dismiss Tactus' complaint or, in the alternative, quash Tactus' purported service of the complaint.[9]

Dated: July 2, 2020

Respectfully submitted,

*/s/ Deron R. Dacus*
Deron R. Dacus
State Bar No. 00790553
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430

---

[8] Tactus purports to make a "request" for jurisdictional discovery and submits a certificate of conference. Opp. at 16. This is improper for several reasons. First, to the extent Tactus seeks to require specific discovery, it must file a motion to compel. Should Tactus argue that its opposition is the equivalent to such a motion, it not only failed to provide HMD with the appropriate briefing for a motion as well as time to respond, but also failed to follow Local Rule CV-7(h), which requires before any "discovery-related motion" a conference "between the lead attorney and any local counsel for the movant and the lead attorney and any local counsel for the non-movant." *Id.* The "conference" Tactus references excluded local counsel for HMD Global and lead counsel for Tactus itself.

[9] Tactus also failed to follow Local Rule CV-7, which required HMD Global to provide "a statement of the issues to be decided by the court" and Tactus to provide "a response to the movant's statement of issues." L.R. CV-7(a)(1). HMD Global followed this rule, *see* Mot. at 2, but Tactus did not. At a minimum, the Court should disregard Tactus' briefing if it does not respond to HMD Global's statement of the issues in its surreply.

Tyler, Texas, 75701
+1 (903) 705-1117
+1 (903) 581-2543 facsimile
ddacus@dacusfirm.com

Matthew S. Warren (California Bar No. 230565)
Robert Kang (California Bar No. 274389)
Erika Warren (California Bar No. 295570)
**Warren Lex LLP**
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-40@cases.warrenlex.com

*Attorneys for HMD Global Oy*